JOHN JEFFRIES *vs.* BENJAMIN JOY JEFFRIES.

Suffolk. March 25. — Sept. 4, 1874. AMES & DEVENS, JJ., absent.

SAME *vs.* SAME.

Suffolk. Nov. 24, 1874. — Feb. 26, 1875. AMES & DEVENS, JJ., absent.

A court of equity will not compel a person, who has agreed to purchase land, to ac-- cept a title so doubtful that it may be exposed to litigation.

On a bill in equity to enforce specific performance of an agreement to purchase land, the court will not, if there is any doubt, decide whether a proviso in a deed creates a condition or a restriction, when the parties, who may be entitled to enforce the restriction, or to take advantage of the breach of the condition, are not before it.

A. conveyed real estate in trust for B., giving B. the power to dispose of the whole or any part in fee by deed of appointment or by will. B. exercised the power by conveying, by separate deeds, three adjacent lots to her three daughters, giving one lot to each daughter for a nominal consideration. Each lot had a house on it and a stable in the rear on another street; and each deed contained the clause, "pro-- vided that the roof of the aforesaid stable shall never be raised more than thirteen feet above" the street, on which it was situated. B. by will gave to her executors "all the estate which I have power to give or dispose of in any way," to divide into three equal shares, one of which was to be given to each of her three daughters The executors conveyed to each daughter one third part of all the right, title, in terest and estate of said grantors under the devise of B. in and to certain lands not mentioning the lands conveyed by deed of B., "and all other lands which sai

grantors hold as tenants in common and undivided under the devise of said B." The plaintiff owning one' of the parcels conveyed by B. to her daughters, made a contract of sale with the defendant in regard to it, and on a refusal by the latter to perform, brought a bill in equity for specific performance. *Held,* that there were objections to the plaintiff's title, which were not so clearly without foundation as to justify the court in decreeing specific performance. *Held, also,* in an action at law for breach of said contract, that the proviso was a restriction for the benefit of the other two lots, and not a condition, and that the restriction applied to a building of any description on the land where the stable stood.

THE FIRST CASE was a bill in equity to enforce specific performance by the defendant of an agreement in writing for the purchase of a house and lot of land in Boston, extending from Chestnut Street to Mount Vernon Street. The answer set up that the title was incumbered by a condition or restriction which prevented the erection of any building of a greater height than thirteen feet, upon that part of the land abutting on Mount Vernon Street.

Hearing before *Morton,* J., who reserved the case for the consideration of the full court on the bill, answer and an agreed statement of facts. The nature of the case appears in the opinion.

*J. C. Gray, Jr.,* for the plaintiff.

*H. Stockton & R. Gray,* for the defendant.

WELLS, J. In 1806, these premises, with two other similar parcels adjoining upon either side, each having a house fronting upon Chestnut Street, and a stable in the rear, were held in trust for the use of Mrs. Hepzibah C. Swan, with power to dispose of the whole or any part in fee by deed of appointment or by will. She exercised the power in favor of her three daughters, conveying one of these three houses and lots to each, in three successive years, inserting in each deed the clause, " provided that the roof of the aforesaid stable shall never be raised more than thirteen feet above Olive Street " — now Mount Vernon Street. The deed of the parcel which the plaintiff now owns was the second of the three in order of time, being dated in 1807. Mrs. Swan had a like interest in a lot of land upon the opposite side of Olive, or Mount Vernon Street; but any rights to enforce this restriction, that may have attached to those premises, have been severed and discharged by the terms under which they were subsequently conveyed by her executors.

Mrs. Swan by her will gave all the estate which she had power to give, or dispose of in any way, to her executors to be divided in three equal shares, one of which they were to convey to each of her daughters. The executors, accordingly, conveyed to each of the daughters, " one third part of all the right, title, interest and estate of said grantors, under the devise in trust of said Hepzibah Swan in and to " certain lands, not mentioning those conveyed by deed to her daughters, " and all other lands which said grantors hold as tenants in common and undivided under the devise of said Hepzibah deceased."

The questions raised are whether the clause, above quoted from the deed, created a condition of the conveyance, or a restriction in favor of the appointees of the other two parcels, for the mutual benefit of the three ; and whether, in either case, it has since been discharged by the effect of the will of Mrs. Swan, or by the partition of her estate ; and if not discharged, whether it forbids the greater elevation of a stable only, or applies to buildings of any and all descriptions, it being agreed by the parties that the land on Mount Vernon Street has not been used for a stable for the last twenty years ; and that if the condition or restriction applies to that part of the premises only when used as a stable, it shall not be deemed a defect in the title.

The discussion of these questions before us has evinced, on both sides, thorough research and accurate appreciation of the principles involved. But even if the court has now all the aid it can reasonably expect at any time in reaching a conclusion upon the points that have been presented, the difficulty is that we cannot now make any authoritative decision. The parties interested to enforce this restriction, or who may claim to be entitled to take advantage of a breach of condition, are not before us ; and no decree that we might render in this case, or opinion we might express in regard to their rights, would be binding upon them in any future litigation ; nor would it be binding upon the court, to affect its consideration of the questions anew when presented by such parties. This is a sufficient reason in equity for not requiring a purchaser to accept a title that is in any way doubtful. *Sohier* v. *Williams*, 1 Curtis, 479, 491.

In an action of contract to recover damages for breach of the agreement, the court would necessarily decide all such questions,

for the purposes of the suit and as between the parties to it, because they affect the rights and obligations of the parties under the agreement, all of which are concluded between them by the judgment. But the consequences of such decision do not extend beyond that judgment. On the other hand, the effect of this proceeding in equity, if the plaintiff should prevail, would be to require the defendant to accept as perfect a title which he may hereafter be compelled to defend against incumbrances now pointed out, the validity and effect of which cannot now be conclusively determined as against future litigants who may seek to enforce them.

It is urged by the plaintiff that the court should at least pass upon the question whether the proviso in the deed of Mrs. Swan is a condition now in force which may defeat the title derived under it ; because otherwise it can never be brought to a decision except at the risk of forfeiture of the entire estate. But that is precisely what the court has not power to do, so as to conclude those to whom the benefit of the condition, if it be one, has passed ; and the effect of a decree, overruling this defence, would be simply to transfer from the plaintiff to the defendant whatever of risk or inconvenience there may be from such a cause. Hence the propriety and the necessity of the rule in equity that a defendant, in proceedings for specific performance, shall not be compelled to accept a title in the least degree doubtful. It is not necessary that he should satisfy the court that the title is defective so that he ought to prevail at law ; it is enough if it appear to be subject to adverse claims which are of such a nature as may reasonably be expected to expose the purchaser to controversy to maintain his title, or rights incident to it. *Richmond* v. *Gray*, 3 Allen, 25. *Sturtevant* v. *Jaques*, 14 Allen, 523. *Hayes* v. *Harmony Grove Cemetery*, 108 Mass. 400. He ought not to be subjected, against his agreement or consent, to the necessity of litigation to remove even that which is only a cloud upon his title.

The plaintiff has not succeeded in satisfying us that the objections, which are made to the title he offers to convey, are so clearly without foundation as to justify the court in requiring the defendant to accept it in fulfilment of his agreement. The bill must therefore be *Dismissed without prejudice.*

THE SECOND CASE was an action of contract for breach of the agreement which the plaintiff sought to have specifically enforced in the first case. The case was submitted to the Superior Court, on an agreed statement of facts, judgment was ordered for the plaintiff for $500, and the defendant appealed to this court. The nature of the case appears in the opinion.

*J. C. Gray, Jr.*, for the plaintiff.

*H. Stockton & R. Gray*, for the defendant.

WELLS, J.   The question in this case is upon the construction and effect of a clause, inserted in each of three deeds of appointment by which Hepzibah Swan, in the years 1806, 1807 and 1808, respectively, conveyed to her three daughters three similar adjoining estates in Boston, each extending from Chestnut Street to Olive Street, now Mount Vernon Street.   Upon each lot was a dwelling-house, with party walls, fronting on Chestnut Street, and a stable in the rear, next to Olive Street.   Mrs. Swan had a similar equitable interest, and power of appointment, in another estate upon the opposite side of Olive Street, and in other lands elsewhere in Boston.   Each of her three deeds above referred to, recites that she " is desirous of limiting and appointing a certain part of the premises," so held, " for the advancement of her daughter," who was a married woman, " and for the securing of the same to her heirs and assigns."   The consideration named is " natural love and affection for her said daughter, and of five dollars to her in hand paid."   The deed describes the premises in two parts; that on Olive Street as " a stable in the rear of said premises, with the land under the same."   Each part is bounded on a passage way, running east and west across the three lots, " which is for the accommodation of the premises hereby granted, and the two adjoining tenements."   The lot, to which this suit relates, was the middle of the three lots so conveyed, and the second in order of time.   The clause in question was connected with certain other provisions securing and regulating common rights between the proprietors of the three lots.

We are satisfied that the proviso in regard to the roof of the stable was inserted in each of these three deeds as a restriction upon the use or mode of occupation, for the common benefit of the three grantees, in respect of their several estates so granted to them, and perhaps also for the benefit of the estate of the ap-

pointor upon the other side of Olive Street. The relations of the parties to each other, the declared consideration and purpose of the conveyances, the character, form and order of the various provisions affecting the future use of the several estates, all point to this interpretation. There is nothing to indicate that it was intended as a personal right reserved to Mrs. Swan and her heirs to defeat the conveyance upon a violation of its terms. That it was introduced in the deed by the technical word "provided," does not make it necessary to give it a technical meaning and effect, if the context and the general purpose of the deed indicate that it was not so intended. *Chapin* v. *Harris,* 8 Allen, 594. It is only by taking it out of its literal connection and form, and regarding it in its relations to the whole scope and subject matter of the conveyance, that effect can be given to it in a reasonable manner, according to the apparent intent of the appointor.

We think the facts sufficiently show that the clause was inserted in all the deeds in pursuance of a general plan or purpose of the grantor, which regarded the mutual advantage of all the lots in the hands of the several future owners; and with intent that neither should be allowed to so occupy the rear land with buildings as to obstruct the outlook of the others towards Olive Street. That being so, each would have an interest in the provision which would entitle him to enforce it against the others. It was on the ground of the absence of such an intent or purpose, shown by the terms of the deeds or the nature of the restriction, that the suits failed in *Badger* v. *Boardman,* 16 Gray, 559; *Jewell* v. *Lee,* 14 Allen, 145; *Sharp* v. *Ropes,* 110 Mass. 381; and *Dana* v. *Wentworth,* 111 Mass. 291.

As a restriction, it must be construed beneficially, according to the apparent purpose of protection or advantage to the several estates, which it was intended to secure or promote. Its leading and most obvious purpose was to prevent the intercepting of light, air and prospect, by a building or roof raised beyond the height named. So far as that purpose was concerned, it would make no difference for what the building should be occupied. It could not have been the purpose to prevent the erection or use of a building there for a stable. We may assume, therefore, that the word "stable" was used simply as a designation of the building then

existing.   It is of some significance that the rear lot was de-scribed in the deed as a stable, with the land under the same. We are of opinion that the restriction had no reference to the character of the building as a stable ; and that it equally forbids the raising of the roof of the building then existing, and of any other building that may at any time be substituted in its place, to a height beyond the prescribed limit.

The restriction is in the nature of a servitude, the benefit of which would become attached to the other estates, and pass with them as appurtenant.   As to the estate first conveyed, there may be difficulty in giving to it the benefit of the restriction upon the other two lots, subsequently conveyed, as a legal right or ease-ment.   But we think it comes fairly within the principle of the cases in which a remedy in equity is afforded to enforce restric-tions of a similar character.  *Whitney* v. *Union Railway*, 11 Gray, 359.  *Parker* v. *Nightingale*, 6 Allen, 341.  *Linzee* v. *Mixer*, 101 Mass. 512.

As to the land upon the other side of Olive Street, by the terms of the deed, by which it was conveyed subsequently to the death of Mrs. Swan, the right seems to have been detached from the land and thus extinguished.   But to the third lot, retained by Mrs. Swan and subsequently conveyed to the third daughter, the benefit of the restriction became annexed as an appurtenant legal right which has passed as such to the present owners of that estate.   To that extent, at least, it is an incumbrance upon the middle lot, of such a nature as, according to the terms of the agreed facts upon which the case is submitted, renders the plain-tiff unable to fulfil his agreement for its sale and conveyance ; and accordingly there must be     *Judgment for the defendant.*