NATHANIEL E. CHASE *vs.* MARY L. WALKER & others.

Suffolk.    November 11, 12, 1896. — January 8, 1897.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Easement — Light and Air — Construction of Covenant.*

A., who owned on C. Street an estate upon which was a brick wall forming a boundary of three estates on W. Street, covenanted with the owners of those estates that neither he nor his heirs and assigns "shall or will ever carry or cause to be carried any higher than the same now is, the brick wall which separates my estate on C. Street . . . from the three estates on W. Street, . . . and in case the wall now there should be destroyed, injured, or taken down, that no wall or anything else to obstruct in the least degree the light or air shall ever be there erected higher than ten feet from the surface of the yards of said W. Street estates." *Held,* that a grantee of A.'s estate, whose conveyance provided that the land should be subject to the conditions in the covenant, could not build thereon next to the wall anything to obstruct light or air more than that wall, or such other wall as was described, would obstruct them.

PETITION, filed January 25, 1894, as amended, under St. 1889, c. 442, against Mary L. Walker, W. Eliot Fette, Frances W. Simpson, Ralph B. Williams, and Henry P. Bowditch, alleging that the petitioner was in possession of and seised in fee simple of a parcel of land, with the buildings thereon, situated on Chestnut Street in Boston, and subject to the conditions touching the east wall of the estate set forth in a covenant made between Cornelius Coolidge and Titus Welles and others, on March 6, 1826, the material portion of which is as follows: "That neither I nor my heirs or assigns, or either or any of them, shall or will ever carry or cause to be carried any higher than the same now is, the brick wall which separates my estate on Chestnut Street in said Boston from the three estates on Walnut Street belonging to said Welles, Dutton, Newman, and Phillips, and in

case the wall now there should be destroyed, injured, or taken down, that no wall or anything else to obstruct in the least degree the light or air shall ever be there erected higher than ten feet from the surface of the yards of said Walnut Street estates."

The petition further alleged, that of the above described parcel of land the petitioner conveyed to one George, by deed dated April 8, 1892, a parcel of land with the brick wall thereon standing, which parcel George conveyed to Irene P. Chase, wife of the petitioner, by deed dated the same day, the wall being the same mentioned in the covenant of Coolidge above set forth; that the estates of Titus Welles and others, situated on Walnut Street, extended from that street southwesterly to said brick wall, and they were the owners of their estates at the time Coolidge executed the covenant above set forth; that the existing owners of the estates and the successors in title to Welles and others were the respondents; that the petitioner had built in the rear of his dwelling-house on Chestnut Street an addition to the same, extending out over the land lying on the southwesterly side of the brick wall, and forming a back yard to his estate; that such addition extended over and above the ground of the yard perpendicularly upwards to the height of one story of the house, and was in the nature of a bay to the rear of the house one story high, and higher by twenty feet or more than the brick wall, which remained of the same height as it was at the execution of the covenant in question, and more than ten feet higher than the surface of the yards of the estates on Walnut Street; that the petitioner was informed that the respondents contend that the petitioner has no right to build any structure on his land lying southwesterly of the brick wall and southeasterly of and in the rear of his dwelling-house in his yard, or, if he has the right to build structures on the land, that he has no right to build thereon any structures higher than the brick wall, or, in case the wall should be moved, higher than ten feet above the level of the surface of the Walnut Street estates, and that the addition to the dwelling-house has been built in violation of restrictions on the land established for the benefit of the respective estates; and that the petitioner contended that he had a right to build any structures to any height he may see fit, subject only to such general laws and ordinances as are applicable thereto.

The prayer of the petition was that the court would determine whether, and to what extent, any encumbrance or condition restricted the petitioner in the use and improvement of his land.

The answer alleged that, by the covenant of Cornelius Coolidge with Titus Welles and others, the respondents had an easement of light, air, and prospect in the estate of the petitioner, appurtenant to their respective estates.

Hearing before *Lathrop*, J., who reported the case for the consideration of the full court, in substance as follows.

The petitioner, by deed dated June 1, 1891, became seised in fee simple of the parcel of real estate described in the petition, with all the buildings thereon, subject to the conditions set forth in the covenant therein mentioned. The petitioner, at the filing of the petition, was seised in fee simple and in possession of the premises, excepting the land with the brick wall thereon standing, bounded easterly by the estates of the respondents Walker, Fette, and Simpson, which was then owned by the wife of the petitioner, he having conveyed the same to one George by deed dated April 8, 1892, and George by deed of the same date having conveyed the same to her.

The relative situation of the respective estates of the parties is shown on the following plan, the heavy black strip representing that part of the land owned by the petitioner's wife and covered by the brick wall mentioned in the covenant in question.

CHESTNUT STREET.

No. 6.          No. 4.

All mesne conveyances by which the title passed to the petitioner provided that the land should be subject to the conditions of the covenant of Coolidge with Titus Welles and others.

The wall referred to in the covenant is, at the surface of the ground, forty-nine feet and between ten and eleven inches from the westerly line of Walnut Street. It is level on the top in the rear of the Walker and Fette estates, and in the rear of the Simpson estate it is about four inches higher, or the thickness of two bricks. The wall is about a foot thick. Its height above the ground surface of the Walker estate is seven and two tenths feet, in the rear of the Fette estate eleven and three tenths feet, and on the other side of the wall on the petitioner's estate ten and eight tenths feet. The grade from Chestnut Street one hundred feet down on Walnut Street is such that Walnut Street falls off six and one half feet in one hundred and four feet, and the grade of Chestnut Street falls off westerly from Walnut Street about seven feet in a hundred. The surface of the ground on the petitioner's estate is higher than the surface on the Simpson and Fette estates, and lower than on the Walker estate, the surface of the Walker estate having been raised within ten years by filling in. The ground of the petitioner's estate is substantially on a level. The surfaces of the yards in the rear of the estates on Walnut Street now owned by the respondents were at different levels, corresponding to the grade of the slope from Chestnut Street down Walnut Street before they were covered with buildings, and at the date of the covenant the distance from the back of the buildings to the wall in question was about eighteen feet.

The wall is built of the same kind of bricks as the house on the petitioner's estate, and was built over the wooden plank vaults belonging to the estates of the respondents, and at the ends of the yards the top of these vaults was six feet below the surface of the ground. These vaults years ago were abandoned, and as the yards were built upon they were filled up, and have all been filled up.

During the hearing, the respondent Walker was allowed to file an additional answer setting up an estoppel, and evidence was admitted in support of its allegations.

Such order or decree was to be entered as law and justice might require.

*D. E. Ware*, for the petitioner.

*J. C. Gray & F. Rackemann*, for the respondents.

ALLEN, J.  It is quite plain that the literal construction which is contended for by the petitioner could not have been in the minds of the parties to the covenant.  Under that construction, the covenantor might at once have erected a building or wall directly abutting upon the existing wall, and carried it up as high as he saw fit.  Such a construction would lead to an absurd consequence.  So far as light and air were concerned, there would have been no practical difference to the covenantees between such a structure and carrying up the existing wall.  It cannot be supposed that this covenant was given and received with the intention of restricting Mr. Coolidge and his heirs and assigns from building a higher wall on the space then occupied by the existing wall, but leaving him at liberty to build as high as he pleased just inside that wall.

The only question then is whether the words of the covenant will admit of a broader meaning.  In our opinion they will.  The instrument was in effect a grant of an easement; *Bronson* v. *Coffin*, 108 Mass. 175, 180; *Ladd* v. *Boston*, 151 Mass. 585; and the words may be construed with a leaning against the grantor or covenantor, in order to carry out the obvious intention of the parties.  That intention was that no wall or anything else should be built to obstruct in the least degree the light or air above the height specified.  Looking at the words with reference to this obvious intention, they mean that nothing shall be built on that lot next to the wall to obstruct light or air more than the existing wall, or such other wall as is described, would obstruct them.

Such a construction is warranted by the rules which are applied in the construction of contracts, statutes, and other written instruments, with a view of avoiding results which are absurd, or inconsistent with what was meant by the parties to or the framers of the instrument.  Met. Con. 278, 279, 303, 307, 312. Leake, Con. § 189.  *Grey* v. *Pearson*, 6 H. L. Cas. 61, 106.  *Ford* v. *Beech*, 11 Q. B. 852, 866.  *Oates* v. *National Bank*, 100 U. S. 239, 244.  *Staniels* v. *Raymond*, 4 Cush. 314, 316.  *Canal Co.* v. *Hill*, 15 Wall. 94.

The petitioner now contends that, if an easement of light and

air was granted, it has been extinguished or abandoned.   If this ground of contention is open, we find no evidence sufficient to support it.

We are therefore of opinion that the petitioner's lot adjoining the wall, to wit, No. 4 Chestnut Street, is subject to an easement in favor of the three lots belonging to the respondents on Walnut Street for light and air, to the extent above mentioned.

It becomes unnecessary to consider the question of estoppel.

*Ordered accordingly.*