CONGREGATION BETH ABRAHAM *vs.*
THOMAS M. MURADIAN, JR.
(and a companion case[1]).

Worcester. Norfolk. March 6, 1968. — May 8, 1968.

Present: WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Way,* Public: entry. *Contract,* For sale of real estate. *Eminent Domain,* Validity of taking.

An entry in 1931 for the purpose of construction upon a part of the lands included in an order of taking by eminent domain for a town way was, under G. L. c. 79, § 3, sufficient to validate the taking as to a part of the lands included in the order upon which no entry was made. [298–299]

Under a provision of an agreement for sale and purchase of real estate that, if the seller should be unable to convey "a good and clear title . . . free from all encumbrances" except those listed, "any payments made under this agreement . . . [should] be refunded," the buyer was entitled to a refund of his deposit where it appeared that a part of the land covered by the agreement had been included in a valid taking by eminent domain for purposes of a town way some years before and that such encumbrance was not listed in the agreement. [299]

BILL IN EQUITY filed in the Superior Court on September 4, 1962.

CONTRACT. Writ in the Superior Court dated August 1, 1962.

---

[1] Thomas M. Muradian, Jr. *vs.* Congregation Beth Abraham and two trustees named in a trustee writ.

The cases were heard by *Barron, J.*, on a master-auditor's reports.

*Jerome P. Facher* for Congregation Beth Abraham.

*Marshall Simonds* (*Molly G. Teicholz* with him) for Thomas M. Muradian, Jr.

WHITTEMORE, J. A bill in equity filed in the Superior Court in Worcester County was consolidated for trial with two cases entered in the Superior Court in Norfolk County. The three cases were referred to a master-auditor, his findings of fact to be final. Only one of the law cases is now before us. The effect of the final decree in the equity case and the order for judgment in the law action is that Muradian is ruled to be without obligation under a purchase and sale agreement of November 9, 1961, of land of the Congregation in Canton, and the Congregation is ordered to repay his $8,500 deposit.

The agreement applied to land and buildings at 731 Washington Street, Canton, and called for a "good and sufficient quitclaim deed . . . conveying a good and clear title to the same, free from all encumbrances" except those listed.

The land was at the corner of Washington, Centre, and Traverse streets. About 3,800 square feet of the entire parcel (containing approximately 60,000 square feet) which was described in the agreement was included in an order of March 11, 1931, recorded March 18, 1931, taking land for a layout and widening of Centre Street. This possible encumbrance was not listed in the agreement. The master-auditor found that to the extent that the Congregation was unable to give sufficient title to this part of the property there was a substantial default. The subsidiary findings support this conclusion.[2]

The parties are at issue as to whether a sufficient entry

---

[2] The resulting reduction in the lot area reduced the potential size of any single story building on the site, permitted under the zoning by-law, by 4,750 square feet assuming the lost area would be devoted solely to parking spaces and not to access drives or aisles. The reduction in area decreased the area of building possible for the supermarket company for which the lot was to be acquired below its self-imposed ratio of approximately three square feet of parking spaces and drives for each one square foot of building.

had been made to validate the 1931 taking. An entry was made on other land for the construction of the way, but no entry was made on the land of the Congregation. The master-auditor concluded on adequate subsidiary findings that unless there was a requirement for entry on the land of the Congregation the steps taken by the town constituted an entry for the purpose of constructing the way.

The statute applicable in 1931 was G. L. c. 79, § 3, with provisions first appearing in St. 1918, c. 257, § 187. This made the validity of the taking subject to the provision "that when a taking is made for the purpose of a highway or town way . . . the right to damages shall not vest until such way . . . has been entered upon or possession thereof has been taken for the purpose of constructing the same, and if such entry is not made or possession taken within two years of the date of the order, the taking shall be void."[3]

Muradian contends that the reasonable construction of this is that it means what it says, that is, that entry upon "such way" vests the right to damages and validates the order. The Congregation's brief misstates the statute asserting that it provided "that the right to damages for a taking for a public way did not vest until the land [*sic*] 'has been entered upon . . .'." The Congregation finds in the statutory history support for construing the statute as though it did so provide. To us, on the contrary, the history confirms that the statute is to be applied as it reads.

The statute prior to St. 1918, c. 257, § 187, provided in St. 1917, c. 344, part 2, § 63, "The laying out, relocation or alteration of any way . . . shall be void as against the

---

[3] See also the amendment of G. L. c. 79, § 3, by St. 1943, c. 251, § 1, which consistently provides that if within two years after the "order of taking for any such way . . . entry is made or possession taken thereunder for the purpose of constructing the same, the board . . . [making the taking] shall . . . [record] a certificate of such entry or taking possession." For the present rule see St. 1964, c. 579, § 1, which strikes the third, fourth, and fifth sentences of G. L. c. 79, § 3, and substitutes: "Upon the recording of an order of taking under this section, title to the fee of the property taken or to such other interest therein as has been designated in such order shall vest in the body politic or corporate on behalf of which the taking was made; and the right to damages for such taking shall thereupon vest in the persons entitled thereto unless otherwise provided by law."

owner of any land over which the same is located, unless possession is taken of such land, for the purpose of constructing, relocating or altering such way, within two years after the right to take such possession first accrues . . . but an entry for the purpose of constructing any part of the laying out, relocation or alteration shall be deemed a taking of possession of all the lands included in the laying out, relocation or alterations."

The provision that an entry for constructing any part of the way should be deemed a taking possession of all the included lands appears in St. 1869, c. 303, § 1, and in all the succeeding statutes through St. 1917. See Pub. Sts. c. 49, § 88; St. 1893, c. 82, § 1; R. L. c. 48, § 92.

Statute 1869, c. 303, § 1, enacted a marked change in the law inasmuch as St. 1862, c. 203, § 1, provided that the laying out "shall be void as against the owner of any land over which the same shall be located, unless within a reasonable time, not exceeding two years, . . . possession shall be taken of such land for the purpose of constructing such . . . [way]." See also St. 1842, c. 86, § 1.[4]

What the Congregation asks is that we should discern in the 1918 codification a return to a rule abandoned in 1869. There is no basis for doing so. The reasonably apparent purpose of the change in wording, confirmed by the history, was to put the provision as to the effect of an entry into the main operative words rather than to leave it as a somewhat anomalous enlargement of the meaning of "possession . . . taken."

We rule that there was a sufficient entry in 1931 to vali-

---

[4] "Sect. 1. Whenever the county commissioners of any county shall have estimated the damages sustained by any persons in their property by the laying out or altering any highway, and made a return thereof, in pursuance of the provisions of the eleventh section of the twenty-fourth chapter of the Revised Statutes, said commissioners shall not order said damages to be paid, nor shall any person claiming damage have a right to demand the same, until the land, over which the highway or alteration is located, shall have been entered upon, and possession taken for the purpose of constructing said highway or alteration. *Provided, nevertheless*, that when any person so claiming damages shall have been put to any trouble and expenses by said proceedings, the county commissioners shall allow him full indemnity therefor, although his land may not be entered upon or taken possession of in pursuance of said proceedings."

date the taking. *Poor* v. *Blake,* 123 Mass. 543. *Wheeler* v. *Fitchburg,* 150 Mass. 350. It follows that the Congregation could not convey the marketable title to the described estate which the agreement called for. *Jeffries* v. *Jeffries,* 117 Mass. 184, 187. *O'Meara* v. *Gleason,* 246 Mass. 136, 138. The agreement provides that if the Congregation is "unable to give title or to make conveyance as above stipulated, any payments made under this agreement shall be refunded, and all other obligations of either party hereunto shall cease."

No other points in respect of the action of Muradian to recover his deposit need be considered. There was no error in the order for judgment for Muradian in the amount of $8,500 and interest.

The equity suit was begun by the Congregation and sought specific performance or damages. In a counterclaim Muradian asked rescission of the agreement on the ground of his reliance on the false representation that the entire parcel was zoned for business although 20,000 square feet were not so zoned. The final decree rescinded the agreement and ordered the return of the deposit with interest from April 17, 1962, when demand for return was first made. As the decree makes no provision for costs it is not substantively important whether the facts found justify rescission because of the "joint misunderstanding" as to permitted zoning uses.

The exceptions of the Congregation in the law action are overruled. The final decree in the equity suit is reversed. A decree is to enter that the purchase and sale agreement in accordance with its provisions is terminated.

*So ordered.*