ARTHUR D. MADDALENA, JR. & another,[1] trustees, *vs.*
ROBERT M. BRAND & others.[2]

Barnstable.    March 14, 1979. — April 26, 1979.

Present: GRANT, ROSE, & DREBEN, JJ.

*Real Property*, Restrictions.

Restrictions in a deed which prohibited the erection of any dwelling
    house on the grantee's premises without the written approval of the
    grantor and further prohibited the erection of tents, camps, house-
    trailers, huts or other similar structures on the premises were con-
    strued to prohibit the building of a boathouse. [467-470]

BILL IN EQUITY filed in the Superior Court on February
10, 1972.

The case was heard by *Prince, J.*

The case was submitted on briefs.

*Richard C. Anderson* for the defendants.

*Jerome Daniel Goodman* for the plaintiffs.

DREBEN, J. The plaintiffs brought an action in the Su-
perior Court seeking to compel the defendants to remove
a boathouse allegedly constructed in violation of certain
restrictions contained in the deed to the defendants' nom-
inee. The trial judge found for the plaintiffs, and the
defendants appeal from a judgment ordering the removal
of the boathouse.

---

[1] James J. Cannon.

[2] The original defendants were Robert M. Brand, Roxie F. Brand
and Shirley Brand. John M. Newkirk, Jr., was added as a defendant
later. No one has urged that any distinction should be made among
the various defendants, and our opinion does not differentiate among
them even though in some instances some of the facts may be applic-
able to only some of the defendants.

In determining whether the building of a boathouse violates the restrictions, we have to ascertain the intent of the parties in light of the circumstances. *Allen* v. *Massachusetts Bonding & Ins. Co.*, 248 Mass. 378, 383 (1924). *Bessey* v. *Ollman*, 242 Mass. 89, 91 (1922).

The facts are taken from the trial judge's findings and from the defendants' deed. The plaintiffs' predecessors in title developed a tract of land in Marston Mills which originally contained seventy-eight lots. The tract fronted on two ponds, and it is clear that the waterfronts were important parts of the development. Two private beaches, "A" and "B", were to be maintained for the benefit of all lot owners, and each owner undertook to pay a portion of the cost of maintaining and improving them. The deed to the defendants specifically granted the right to use these beaches, and the defendants' lot is on the water and only one lot removed from beach "B."

At the time of trial the plaintiffs still owned fifty-one lots, twenty-seven lots having been conveyed subject to the same restrictions as are contained in the defendants' deed. The defendants' lot is the only lot within the subdivision upon which a boathouse has been erected. A neighbor of the defendants alerted the plaintiffs to the building of the boathouse, which he considered to be in violation of the restrictions.

It is apparent from the restrictions that their purpose was to insure the development of an attractive residential waterfront community. By their terms, they are to remain in force until January 1, 1996, unless modified or waived by the plaintiffs or their successors in title, and are, as found by the trial judge, for the benefit of the entire tract and of substantial benefit to the plaintiffs.

The first paragraph of restriction 3 reads as follows:

"No building or structure shall be erected, placed, or allowed to stand on the premises, nor shall any alteration to the exterior of any structure be made, until the plans and specifications therefor shall have been approved in writing by the Grantor, or its successors in title, and such

approval has been recorded by the Grantees in the Regis-
try of Deeds for Barnstable County. To secure said ap-
proval, the Grantees agree to submit to the Grantor or its
successors in title, a complete set of exterior plans and
specifications showing the exterior design, height, and
building material of the proposed structure, said plans
and specifications to become the property of the Grantor
or its successors in title. It is the intent of this restriction
that any structure erected on the premises shall be of
Cape Cod, or Colonial, or ranch design, containing at least
eleven hundred (1,100) square feet of living area on the
first floor, exclusive of garage or porches; and in addition
shall have an attached garage with a minimum storage
for one car, and a maximum storage for three cars. Drive-
ways shall be paved."

Restriction 4 states, "No tents, camps, house-trailers,
Quonset huts or other similar structures shall be erected,
placed, or allowed to stand on the premises."

There are also other restrictions limiting the place-
ment or erection of various types of objects on the lots.
For example, only fences of a certain kind can be built,
and then only if they are no more than three and one-half
feet high; garbage or refuse containers are not to be visi-
ble from the ways; exterior clothes drying facilities are to
be located on the side of the dwelling farthest "removed
from the way on which the dwelling fronts"; "boat trail-
ers, or boats, or both, may be parked on the premises, but
only in such locations that they are not visible from the
ways"; at night pets must be kept within the grantees'
dwellings; during construction materials are to be kept
piled and collected neatly on the sites; structures and
grounds of the grantees are to be maintained in a neat
and attractive manner and kept free of debris; if the gran-
tees fail so to maintain their premises, the grantor may
enter to remove underbrush, dead trees and garbage.
Other similar matters are also covered.

The defendant would have us construe restriction num-
ber 3 as applicable only to the dwelling house and restric-

tion number 4 as applicable only to temporary structures, and thus have us conclude that there are no limitations on the building of a boathouse.

We reject this result. We view the restrictions taken as a whole as intending to give the grantors control over buildings or other massive objects on the premises. While restrictions in this Commonwealth are to be construed against the grantor (*Hemenway* v. *Bartevian*, 321 Mass. 226, 229 [1947]; *Brown* v. *Linnell*, 359 Mass. 446, 447 [1971]) they have to be construed "with a view of avoiding results which are absurd, or inconsistent with what was meant by the parties to or the framers of the instrument." *Chase* v. *Walker*, 167 Mass. 293, 297 (1897). See also *Gulf Oil Corp.* v. *Fall River Housing Authy.*, 364 Mass. 492, 495-496 (1974).

In *Chase* v. *Walker* the grantee agreed not to "carry . . . any higher than the same now is, the brick wall which separates my estate on Chestnut Street" from other estates and "in case the wall now there should be destroyed, injured, or taken down, that no wall or anything else to obstruct in the least degree the light or air shall ever be there erected higher than ten feet from the surface" of said land. The court held that although the wall still remained, the restriction precluded a building inside the wall, higher than the wall itself. *Id.* at 297. Similarly, in *Jeffries* v. *Jeffries*, 117 Mass. 184 (1875), where the restriction provided "that the roof of the aforesaid *stable* shall never be raised more than thirteen feet" above the street (emphasis supplied), it was held that the roof of any building which replaced the stable could not be higher than thirteen feet. The court pointed out the restriction "must be construed beneficially, according to the apparent purpose of protection or advantage . . . it was intended to secure or promote." *Id.* at 189. In *Parsons* v. *Duryea*, 261 Mass. 314, 317 (1927), a restriction which did not mention a driveway was held broad enough in its terms to include the grading and construction of a driveway. See also *Sterling Realty Co.* v. *Tredennick*, 319 Mass. 153, 156-157 (1946).

The restrictions here are obviously intended to maintain the aesthetic qualities of the property and its waterfronts. In light of such purpose, we view the facts of this case as closer to those of *Jeffries* v. *Jeffries*, 117 Mass. 184 (1875), *Chase* v. *Walker*, 167 Mass. 293 (1897), and *Parsons* v. *Duryea*, 261 Mass. 314 (1927), than to those of *Hemenway* v. *Bartevian*, 321 Mass. 226 (1947), and other cases cited by the defendants. But see *Stone* v. *Pillsbury*, 167 Mass. 332, 337 (1897). In the context of the restrictions taken as a whole, we hold the words "similar structures" in restriction 4 broad enough to include a boathouse. The intent of the parties would clearly be nullified if lot owners could, without control, line the waterfronts with boathouses of any size, height or description.

*Judgment affirmed.*