### ANNE LOVE *vs.* RICHARD A. PRATT.

No. 04-P-1421.

Essex. May 12, 2005. - September 6, 2005.

Present: LENK, BROWN, & MILLS, JJ.

*Real Property,* Purchase and sale agreement. *Contract,* Performance and breach. *Damages,* Breach of sales contract. *Practice, Civil,* Frivolous action.

A Superior Court judge properly entered summary judgment in favor of a buyer in an action to recover a deposit paid in connection with a purchase and sale agreement, and on the defendant seller's counterclaim for damages, where the seller's failure to deliver possession of the premises free of tenants and occupants on the designated date and invocation of the agreement's so-called "escape" clause demonstrated a lack of good faith and an absence of intent on the seller's part to carry out the agreement in accordance with its terms [456-458]; further, the seller's retention of the buyer's deposit and pursuit of a frivolous appeal from summary judgment for the buyer warranted an award of double costs for the buyer as well as damages on account of her reasonable legal fees for defending the appeal [458-460]. BROWN, J., concurring.

CIVIL ACTION commenced in the Superior Court Department on April 2, 2003.

The case was heard by *Howard J. Whitehead,* J., on motions for summary judgment.

*Daniel P. Murphy* for the defendant.

*Michael J. Splaine* for the plaintiff.

LENK, J. The question before us is whether summary judgment correctly entered for the plaintiff on both her action to recover a total deposit of $37,125, paid in connection with a purchase and sale agreement, and on the defendant's counterclaim for damages. There was no error.[1]

---

[1]Pratt, the appellant, has not reproduced in his brief or the record appendix the judge's "Memorandum of Decision and Order on the Parties' Cross-

The pertinent undisputed facts are these. The defendant, Richard A. Pratt, a builder, was building a new home for himself in Millis. On December 13, 2002, Pratt (the seller) entered into a standard form purchase and sale agreement whereby he agreed to sell to the plaintiff, Anne Love (the buyer), his existing home in Natick (the premises) on March 14, 2003, with time expressly being of the essence, for the sum of $742,500. Because the buyer had agreed to sell her own home on the same date, the March 14, 2003, closing date for the premises was important to her, as the seller well knew.[2] The seller lived in the premises with his girlfriend and another friend.[3] In addition to the "time is of the essence" clause and a clause requiring the seller to deliver possession of the premises at closing "free of all tenants and occupants," the purchase and sale agreement also contained a standard provision (§ 10) giving the seller the option to extend the closing for thirty days, upon written notice to the buyer, in the event that he was "unable to give title or to make conveyance, or to deliver possession of the premises" free of tenants and occupants.

As it turned out, the seller underestimated how long it would take him to build his new house. By letter dated March 6, 2003, eight days before the scheduled closing, the seller informed the buyer that he would be "unable to deliver possession of the premises on March 14, 2003" and, relying on the so-called "escape clause" in § 10, informed her that he was unilaterally extending the closing date for thirty days. The notice did not explain why he was unable to deliver possession and made no

Motions for Summary Judgment" entered on the docket August 31, 2004, as paper no. 13. This is contrary to the requirements of Mass.R.A.P. 16(a)(6), as amended, 428 Mass. 1603 (1999), and Mass.R.A.P. 18(a), as amended, 378 Mass. 940 (1979). The deficiency constitutes reason enough to affirm the judgment.

[2]During contract negotiations, the seller wanted the closing date to be contingent upon his ability to obtain suitable housing. The buyer refused to agree to such a clause because she was selling her own home, which she had to vacate by March 14, 2003.

[3]Neither the girlfriend nor the friend had a tenancy agreement or lease. Both knew of the impending March 14, 2003, closing date; in the three months between execution of the purchase and sale agreement and the scheduled closing, neither was served by the seller with a notice to quit. The record is silent as to any other efforts made by the seller to remove them from the premises prior to March 14, 2003.

reference to any inability to remove tenants or occupants. Since she would be without housing as of March 14, the buyer responded that she would not agree to this extension unless the seller agreed to pay her storage costs and hotel expenses until the closing could take place. She estimated these expenses to be approximately $6,932.00. By letter dated March 12, the seller informed the buyer that he would not pay her requested costs and, in view of her position, which he construed as her intention not to purchase the property, told her that he had as of that day ceased his efforts to find himself substitute housing and storage for his property.

Nevertheless, on March 13, 2003, the seller informed the buyer by letter that he had located suitable short-term housing after all, that he intended to vacate the premises and move into such housing on April 1, 2003, and that he intended to close on that date. On March 27, 2003, the buyer told the seller that she would not reschedule the closing and that the agreement had terminated when the seller "refused to perform on the closing date of March 14, 2003, for the insufficient reason that it was not convenient for him to move." She demanded return of her $37,125 deposit. Rather than return the deposit, the seller appeared at the Middlesex County registry of deeds on what he claimed was the new closing date; the buyer did not appear and the seller thereafter took the position that he was entitled to keep the deposit as liquidated damages pursuant to the agreement. The buyer brought suit to recover her deposit and the seller counterclaimed for damages. A Superior Court judge allowed the buyer's motion for summary judgment.

*Analysis.* On appeal, the seller continues to seek refuge in the escape clause contained in § 10, claiming that he was unable to deliver possession free of tenants and occupants on March 14, 2003, and therefore was entitled unilaterally to extend the closing for thirty days. He maintains that his actions demonstrate a good faith attempt to deliver the premises as required. Along these lines, he states that, once he realized that he could not complete construction of his new home by March 14, 2003, he gave the buyer timely notice, invoked what he viewed as his right under the agreement automatically to extend the closing for thirty days, and tried to find himself other housing,

ultimately making himself available to close on April 1, 2003. When the buyer did not show up at the rescheduled closing, it was she, says the seller, who breached the agreement, thereby entitling the seller to keep the deposit. That is the seller's view of the matter and he relies upon *Stabile* v. *McCarthy*, 336 Mass. 399, 404 (1957); *Durkin* v. *Ferreira*, 21 Mass. App. Ct. 771, 775 (1986), and several trial court decisions to buttress the position he takes.

The case law, however, avails him little, and even when the facts are viewed in an indulgent light favoring the seller, they reveal a position that is quite indefensible. The seller invoked his rights under § 10 because of a claimed "inability" on March 14, 2003, to deliver possession free of tenants and occupants. To use the word "inability" as the seller does, however, is both to distort it beyond recognition and to employ it in a manner that our cases have not done. The seller was obliged by the agreement to deliver possession at closing free of tenants and occupants. That contractual provision implied that the seller must make, prior to closing, reasonable efforts, see *Stabile* v. *McCarthy*, 336 Mass. at 402-403, to empty the premises of tenants and occupants, the latter term, of course, encompassing the seller himself. The seller, however, made no showing as to reasonable efforts he undertook in the months before March 14 to render the premises free of occupants. The seller, on the facts shown, did have the ability to deliver possession conformably with the agreement; all he had to do was move himself and his guests into other quarters — a hotel, if all else failed — and the contents of the premises into storage. He apparently chose not to do so because of the inconvenience or expense.

The seller's reliance upon *Stabile* v. *McCarthy, supra,* is presumably to rebut this suggestion by dint of the fact that he was not required to take actions or make expenditures disproportionate to the circumstances. The seller has placed nothing in the record as to the lodging and storage costs he would have incurred if he had vacated the premises in order to honor the March 14 closing date. The only expenses in the record are the buyer's estimate of roughly $7,000 in estimated hotel and storage costs for the thirty-day delay initially imposed by the seller. In the context of a $742,500 sale, these costs border far more on the de minimis than on the disproportionate.

Then there is the matter of the seller's asserted good faith, a prerequisite for one wishing to avail himself of the protection afforded by the escape clause of § 10. "The clause is no protection to an owner who is not acting in good faith and does not intend to carry out the agreement." *Lafond* v. *Frame*, 327 Mass. 364, 367 (1951). *Durkin* v. *Ferreira*, 21 Mass. App. Ct. at 775. The agreement was plain that time was of the essence and there is no question but that the seller knew why this was so. The seller, with the two other occupants of the premises, knew for several months prior to closing that they would have to vacate the premises on or before March 14, 2003. Nonetheless, as the date approached, they found themselves without what they deemed a suitable place for themselves and their things. That the seller's new house was not yet ready for occupancy does not fall within the category of unanticipated circumstances and uncertainties that we thought did not give rise to bad faith in *Trabucco* v. *Nelson*, 8 Mass. App. Ct. 641, 644-645 (1979).

As in *Lafond* and *Durkin*, the undisputed facts here lead inexorably to the contrary conclusion, i.e., they show a lack of good faith and an absence of intent on the seller's part to carry out the agreement in accordance with its terms. The seller felt free not to close as required on March 14, 2003, but on a later date more convenient to him. He relied on the escape clause in an effort to avoid liability, and then laid claim to the buyer's deposit for damage he claims to have suffered when the buyer would not belatedly purchase the premises. Nothing in these facts or in our case law permits a seller to avail himself of the protections of § 10 and then scoop the buyer's deposit where, as here, the seller has created his own "inability" to deliver timely possession. Entry of summary judgment for the buyer was entirely warranted.

The last point we consider is whether the seller's conduct, particularly in retaining the deposit, thereby in effect making the buyer incur the expense of a lawsuit to recover it, and then pursuing this appeal when the buyer prevailed below, warrants any sanction. Although the buyer has not requested us to do so, we are authorized by statute to award damages of our own motion if it appears to us that an appeal is frivolous. See G. L. c. 211A, § 15; Mass.R.A.P. 25, as amended, 378 Mass. 925

(1979). We have said that "[a]n appeal is frivolous '[w]hen the law is well settled, when there can be no reasonable expectation of a reversal.' " *Avery* v. *Steele*, 414 Mass. 450, 455 (1993), quoting from *Allen* v. *Batchelder*, 17 Mass. App. Ct. 453, 458 (1984). See *Symmons* v. *O'Keeffe*, 419 Mass. 288, 303 (1995); *Ben* v. *Schultz*, 47 Mass. App. Ct. 808, 815 (1999). While unpersuasive arguments do not necessarily render an appeal frivolous, the determination of whether an appeal is frivolous is left to our sound discretion. *Avery* v. *Steele*, 414 Mass. at 455. We exercise the power to award damages sparingly and hesitate "to deem an appeal frivolous and grant sanctions except in egregious cases." *Symmons* v. *O'Keeffe*, *supra.* Although perhaps not as egregious as some of the cited cases imposing sanctions, the seller's conduct must not be allowed to escape our disapprobation.

While the seller characterizes this case as being one of first impression, that is so only in the sense that a situation quite like this one has not previously been the subject of published appellate decisions in this jurisdiction. That the matter is arguably one of first impression is attributable, in our view, not to any particular lack of clarity in applicable law but to the fact that no other individual who has seen fit to play hard ball in this fashion had the temerity to pursue the matter on appeal. Even if the case law construing escape clauses appeared at all unclear to the seller, the flimsy and self-created reason for not delivering timely possession of the premises, coupled with the clarity of the law concerning "time is of the essence" provisions, should at least have given the seller pause, after if not before he lost on summary judgment. The buyer was clear in insisting upon her rights under the latter clause, promptly told the seller that the deal was off, and demanded return of her deposit. See *Owen* v. *Kessler*, 56 Mass. App. Ct. 466, 466-467 (2002). The seller's continued retention of the deposit in the circumstances was unjustified on any reasonable view of the facts and law.

Given the case law and plain common sense, we are persuaded that the seller could not have had a reasonable expectation that the summary judgment decision favoring the buyer would be reversed on appeal. We conclude that a measured rebuke is warranted. Accordingly, the buyer is to have

double costs as well as damages on account of her reasonable legal fees for defending the appeal.[4]

*Judgment affirmed, with double costs of the appeal.*

BROWN, J. (concurring). I concur in the reasoning and result reached by the majority. I enthusiastically endorse the majority's award of attorney's fees and double costs for the reason, if no other, that this appeal was foredoomed and counsel could not reasonably have believed otherwise. See *Britt* v. *Rosenberg*, 40 Mass. App. Ct. 552, 555 (1996), and cases cited therein. See also *Farm Constr. Serv., Inc.* v. *Robinson*, 21 Mass. App. Ct. 955, 956 (1986).

Chief Justice Boudin's words are particularly apt here: "This case is about money, but only money, and should have been settled." *Liberty Mut. Ins. Co.* v. *Nippon Sanso K.K.*, 331 F.3d 153, 163 (1st Cir. 2003). The defendant's counsel would have been well advised to adhere to the following admonition: wise counseling should be the first option; defending hopeless litigation (especially as here) should not be an option at all. See *VMS Realty Inv., Ltd.* v. *Keezer*, 34 Mass. App. Ct. 119 (1993). See also *Petricca Constr. Co.* v. *Commonwealth*, 37 Mass. App. Ct. 392, 402 (1994) (Brown, J., concurring). I am obliged to reiterate the observation made by this court in *Piccicuto* v. *Dwyer*, 32 Mass. App. Ct. 137, 140 (1992): "courts are too frequently called upon to expend their limited resources to assist the needy by the machinations of the greedy."

---

[4]The buyer may submit a petition for her appellate attorney's fees to this court in the manner prescribed in *Fabre* v. *Walton*, 441 Mass. 9, 10-11 (2004), within twenty calendar days of the issuance of this rescript. The seller may respond within twenty calendar days from the date of said filing.