# Yarde Metals, Inc. *vs.* New England Patriots Limited Partnership.

No. 04-P-336.

Suffolk. March 7, 2005. - September 30, 2005.

Present: Greenberg, Cowin, & Green, JJ.

*Contract,* Termination, Promissory estoppel.

A Superior Court judge properly dismissed a civil action alleging breach of contract arising out of the defendant professional football team's termination of the plaintiff's season ticket privileges for the defendant's games, where nothing explicit or implied gave the plaintiff a right to renew its ticket subscription annually [657-660], and where the revocation of the plaintiff's season ticket privileges did not violate the implied covenant of good faith and fair dealing [660-661]; moreover, the plaintiff failed to demonstrate that it reasonably relied to its detriment on an understanding that it possessed an enforceable right to renew season tickets [661-662].

CIVIL ACTION commenced in the Superior Court Department on August 8, 2003.

A motion to dismiss was heard by *Thomas E. Connolly,* J.

*Paul F. Denver* for the plaintiff.

*Daniel L. Goldberg* for the defendant.

GREENBERG, J. After twenty years as a season ticket holder of the defendant, New England Patriots Limited Partnership (Patriots), the plaintiff, Yarde Metals, Inc. (Yarde), received a letter from the Patriots' front office advising that Yarde's season ticket privileges had been terminated, "effective immediately." As the reason, the Patriots stated that on October 13, 2002, an individual named Mikel LaCroix, using a ticket from Yarde's account, was "ejected from Gillette Stadium for throwing bottles in the seating section." The letter, dated October 17, 2002, requested return of Yarde's remaining season tickets and offered a refund of their value.

Yarde's explanation, which it conveyed to the Patriots through

multiple written communications and which is included in the complaint it eventually filed on August 8, 2003, differed. Yarde admitted that LaCroix, a business associate, had been given a ticket for the October 13, 2002, game. Yarde denied that La-Croix had thrown any bottles and offered the following account. Prior to October 13, 2002, and on that date, Gillette Stadium had an insufficient number of men's restrooms in use for football games; the Patriots were aware of the shortage, and it had become the subject of numerous newspaper columns. On the date in question, LaCroix, along with others, used available women's restrooms to answer the call of nature. These patrons were unimpeded by security guards, but for some unexplained reason, as he left the women's restroom, LaCroix was arrested, removed from the stadium, and charged with the crime of disorderly conduct. He subsequently admitted to sufficient facts for a finding of guilt and received a continuance without a finding. The Patriots acknowledged receipt of Yarde's written request to review the season ticket revocation and, in a terse letter dated March 5, 2003, confirmed its decision to terminate Yarde's season ticket account.

Out of options for restoring its season ticket account through dialogue with the Patriots, Yarde filed the complaint in this case. The legal theories in support of the complaint were set forth in two counts. Count I sought to impose liability on the Patriots for breach of its "contractual right to season tickets [that included] a contractual right to renew its season tickets annually." Count II sought to impose liability on the Patriots based on the "doctrine of equitable estoppel [which] prohibits the Patriots from contradicting the expectation of the plaintiff Yarde which the Patriots have created." For relief, Yarde requested a preliminary and permanent injunction against the Patriots, enjoining them from refusing to sell Yarde six season tickets "of the same or higher quality than the tickets Yarde held in 2002." Yarde's motion for a preliminary injunction was denied, and the Patriots' subsequent motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974), was allowed, precipitating this appeal. We affirm.[1]

1. *Contract claim.* Yarde argues that its twenty-year relation-

[1]Copies of the ticket, as well as correspondence between Yarde and the

ship with the Patriots created a contractual right to renew its season tickets annually.[2] That such a right was part of the bargain between it and the Patriots, Yarde maintains, is evidenced by the Patriots' annual offer of the opportunity to purchase season tickets for the upcoming football season to Yarde because of Yarde's status as a season ticket holder. Yarde claims that by revoking its tickets for the actions of its guest, a course the Patriots originally took believing he had been ejected for throwing bottles rather than for using the women's room, the Patriots breached that contractual obligation. Specifically, Yarde argues that the process the Patriots followed in terminating Yarde's season tickets constituted a violation of the covenant of good faith and fair dealing that would be implied in any contractual right to renew annually.[3] We disagree.

The purchase of a ticket to a sports or entertainment event typically creates nothing more than a revocable license.[4] See *Opinion of the Justices,* 247 Mass. 589, 596 (1924); *Essex Theatres Co.* v. *Commonwealth,* 265 Mass. 210, 213 (1928); *Foster* v. *Shubert Holding Co.,* 316 Mass. 470, 473 (1944). Cf. *Baseball Publishing Co.* v. *Bruton,* 302 Mass. 54, 56 (1938) ("The revocation of a license may constitute a breach of contract, and give rise to an action for damages. But it is none

---

Patriots, were attached as exhibits to the verified complaint. These attached exhibits may be considered on a motion under rule 12(b)(6). *Schaer* v. *Brandeis Univ.,* 432 Mass. 474, 477 (2000).

[2]At one point in its brief, Yarde mentions that the relationship between the season ticket holder and the team "can best be defined as an option contract where the ticket holder has the option to purchase season tickets each year." In light of the language on the ticket, the result would not change if this theory were pursued.

[3]Massachusetts courts have implied contracts in the absence of express agreements from conduct between parties that demonstrates that "there was a benefit to the defendant, that the plaintiff expected the defendant to pay for that benefit, and that the defendant expected, or a reasonable person should have . . . expected, . . . to pay for that benefit." *T.F.* v. *B.L.,* 442 Mass. 522, 527 (2004). Massachusetts cases also allow us to imply a term in otherwise vague or nonintegrated agreements from the prior relationship of the parties. See *Affiliated FM Ins. Co.* v. *Constitution Reinsurance Corp.,* 416 Mass. 839, 845 n.10 (1994), citing Restatement (Second) of Contracts § 203(b) (1981); *Schinkel* v. *Maxi-Holding, Inc.,* 30 Mass. App. Ct. 41, 46-47 (1991).

[4]The back of Patriots' tickets states: "This ticket and all season tickets are revocable licenses. The Patriots reserve the right to revoke such licenses, in their sole discretion, at any time and for any reason."

the less effective to deprive the licensee of all justification for entering or remaining upon the land"). No Massachusetts cases, however, address the nature of the relationship between season ticket holders and ticket issuers, and the cases do not preclude parties from contracting for such things as renewal or transfer rights. Picking up on that fact, Yarde suggests we should follow cases from other jurisdictions where it has been concluded that season ticket holders have some protected expectations regarding their season ticket accounts.

In particular, Yarde urges us to extrapolate from two bankruptcy court decisions that ruled that the opportunity to transfer renewal rights to season tickets was an asset of the bankrupt season ticket holder's estate: *In re I.D. Craig Serv. Corp.*, 138 B.R. 490 (Bankr. W.D. Pa. 1992) (season ticket holder permitted to transfer status as season ticket holder upon payment of fee), and *In re Platt*, 292 B.R. 12 (Bankr. D. Mass. 2003). See *Beder* v. *Cleveland Browns, Inc.*, 129 Ohio App. 3d 188, 195 (1998) (season ticket holders had purchased a right of first refusal to tickets to Browns' games; the Browns had destroyed that right by moving their team to Baltimore).

Other cases have concluded that season ticket subscriptions do not include any protected, implied right to renew annually. See, e.g., *In re Harrell*, 73 F.3d 218, 219 (9th Cir. 1996) ("opportunity to renew season tickets is not a property right under Arizona law"); *Charpentier* v. *Los Angeles Rams Football Co.*, 75 Cal. App. 4th 301 (1999) (affirming dismissal of an implied contract claim against the Rams alleging a right to renewal, while stating in dicta that some renewal right might be subject of implied contract but no fan could reasonably expect right to renew season tickets when team moved halfway across country); *Soderholm* v. *Chicago Natl. League Ball Club, Inc.*, 225 Ill. App. 3d 119, 124 (1992) (holding that a Chicago Cubs season ticket holder did not have a contractual right to an annual option to repurchase those tickets).

The contractual right Yarde asks this court to imply here would substantially expand the reasoning of the decisions that it cites for support. The bankruptcy decisions focus on the nature of the season ticket as an asset of the bankrupt ticket holder's estate. In those cases the teams did not attempt to revoke season

tickets, but rather intervened only when the estate tried to transfer season ticket accounts, a practice both teams typically allowed. Therefore, they provide little support for the proposition that a court can enforce a contractual right to renew that trumps a ticket issuer's decision to cancel a specific season ticket on account of the behavior of the ticket holder.

Despite the fact that the parties themselves are not precluded from contracting for renewal rights, Yarde's allegations (which, for purposes of the motion, we assume it would be able to prove) would not justify implying a contractual right that goes beyond any previously recognized in other jurisdictions and that would contradict the explicit language on the ticket. The annual "automatic and unsolicited" offer from the Patriots to purchase season tickets may not thwart the Patriots' right to revoke ticket privileges for cause that the ticket holder agreed to as part of the season ticket package. Where there is a seemingly clear transaction — Yarde purchased six tickets to ten games at $100 each — we cannot infer an annual renewal right, the value of which would dwarf the value of the otherwise clear commercial exchange. More importantly, such a theory would disregard the Patriots' express disclaimers of any right of the purchaser to renew in subsequent years printed on game tickets and informational material provided to season ticket holders. The ticket specifically stated that "[p]urchase of season tickets does not entitle purchaser to renewal in a subsequent year." See *Vakil* v. *Anesthesiology Assocs. of Taunton*, 51 Mass. App. Ct. 114, 119-120 (2001), citing *Robert Indus., Inc.* v. *Spence*, 362 Mass. 751, 753-754 (1973), setting forth the well-settled rule of contract interpretation that "[p]arol evidence is not generally admissible to vary the unambiguous terms of the contract." Yarde has articulated no basis on which we can ignore the language on the ticket.

Included in the contract count, Yarde alleges that "[b]y terminating the plaintiff's season tickets for 2002 and for the future arbitrarily, without cause . . . and based upon incorrect and false information," the Patriots violated the implied covenant of good faith and fair dealing. "Every contract implies good faith and fair dealing between the parties to it." *Warner Ins. Co.* v. *Commissioner of Ins.*, 406 Mass. 354, 362 n.9 (1990),

quoting from *Kerrigan* v. *Boston*, 361 Mass. 24, 33 (1972). Even if the complaint sufficiently invoked some type of option or implied contract claim, a proposition which we reject, the Patriots' revocation of Yarde's tickets would not violate an implied covenant of good faith and fair dealing. Although the Patriots labored under an initial misunderstanding as to why Yarde's guest had been ejected, Yarde later informed the Patriots of the restroom incident. The Patriots confirmed their decision to revoke the tickets and offered Yarde a refund for the remaining tickets for the season. While we agree with the two motion judges who have heard motions in this case that the Patriots' response seems harsh, it did not have the effect of diverting to itself the profits or benefits of the value of the season tickets. We assume that any resale of the tickets would only make the Patriots whole for the revenue it lost from Yarde. In its brief, Yarde vaguely refers to the revocation as a pretext to force Yarde to rebid for more expensive tickets. The complaint, however, does not plead this point. Nor is there a claim for a violation of Massachusetts trade practices under G. L. c. 93A, § 9.

2. *Estoppel.* As an alternate theory of recovery, Yarde has alleged entitlement to its season tickets on the basis of estoppel.[5] The point Yarde generally urges is that insofar as season tickets are concerned (as distinct from tickets to a single game), automatic and routine renewals amounted to a representation that it possessed a renewal right. It avers that in purchasing its season tickets it relied to its detriment on this understanding.[6]

For Yarde to prevail on any estoppel claim, it must show, amongst other things, that its reliance on any alleged representation was reasonable. *Turnpike Motors, Inc.* v. *Newbury Group, Inc.*, 413 Mass. 119, 125 (1992). Given the explicit language printed on the back of the ticket and included on the promotional materials, Yarde's reliance on any purported conflicting representation was unwarranted. See *Kuwaiti Danish Computer*

___

[5] As the defendant points out, Yarde has not pleaded all the elements of a claim for estoppel.

[6] Yarde does not dispute that the Patriots may eject Yarde's guest from a single game if he behaves inappropriately. However, Yarde argues that it should not lose season tickets or right to renew those tickets because of a single act of misbehavior by a single guest.

*Co.* v. *Digital Equip. Corp.*, 438 Mass. 459, 468 (2003) ("Reliance on any statement or conduct . . . was unreasonable as a matter of law because it conflicted with the qualifying language [in a written document]"). In addition, we cannot agree that it would be reasonable for Yarde, without having any previous experiences with ejection from Patriots' games, to have understood that it had an enforceable right to renew tickets even in the face of a decision by the Patriots to revoke tickets as a disciplinary measure when a fan was arrested in the stadium.

In sum, Yarde's complaint did not plead a justiciable cause of action under either count. The judge did not err in dismissing the complaint.

*Judgment affirmed.*