## WESTON FOREST AND TRAIL ASSOCIATION, INC. *vs.* BETH ELLEN FISHMAN.

No. 05-P-1076.

Suffolk. April 4, 2006. - June 30, 2006.

Present: LAURENCE, DREBEN, & VUONO, JJ.

*Laches. Estoppel. Real Property,* Conservation restriction. *Practice, Civil,* Appeal, Frivolous action, Costs.

In an action brought by a plaintiff seeking to enforce a conservation restriction burdening certain property, the Land Court judge properly concluded that the doctrines of laches [657-659] and estoppel [659-660] did not apply to the claim of the plaintiff, a private nonprofit entity created for the purpose of protecting and conserving land and water, where the plaintiff had brought suit to ensure that the property owner acted in accordance with public interest; further, the judge properly concluded that the terms of the conservation restriction were not ambiguous and did not permit the defendant to construct a barn on the property in question [661-662].

This court declined to award attorney's fees and costs to a plaintiff prevailing on appeal, where the applicable law was not so well settled that the defendant's arguments were frivolous. [662-663]

CIVIL ACTION commenced in the Land Court Department on September 10, 2004.

The case was heard by *Leon J. Lombardi*, J., on a motion for summary judgment.

*Jeffrey P. Allen* for the defendant.

*Lisa C. Goodheart* (*Gregory P. Bialecki* with her) for the plaintiff.

VUONO, J. Beth Ellen Fishman appeals from a judgment of the Land Court compelling her to remove a newly constructed barn from her property in Weston. In September, 2004, the Weston Forest and Trail Association, Inc. (WFTA), commenced an action seeking to enforce a conservation restriction (restriction) that burdens Fishman's land. The WFTA claimed Fishman had

constructed a barn on the part of her property that is restricted and is thus unbuildable. The judge, acting on the WFTA's motion for summary judgment, decided that the barn was built in violation of the restriction and ordered Fishman to remove it. We conclude that there is no disputed issue of material fact and that the judge ruled correctly as matter of law. Therefore, we affirm the grant of summary judgment. Although we affirm the judgment, there is no merit to the WFTA's claim that this appeal is frivolous.

1. *The undisputed facts.* The following facts are undisputed. The WFTA is a Massachusetts nonprofit corporation organized for various purposes including the conservation of land in and around Weston. Fishman owns approximately eight acres of land located at 190 Concord Road, Weston (property), where she resides.

In 1974, the board of selectman for Weston and the Commissioner of Natural Resources[1] approved and recorded a conservation restriction that applies to part of the property. The restriction was granted by previous owners of the property for the benefit of the WFTA. A plan entitled "Compiled Plan of Land in Weston, Mass." (compiled plan), also recorded in 1974, identified the boundary between the restricted and unrestricted areas of the property. The restriction, which has the benefit of G. L. c. 184, § 32, and is thus enforceable by the WFTA, covers all but 60,000 square feet of the property and limits permissible activities in the restricted area. It provides, in pertinent part:

> "A. Subject to powers and rights reserved under paragraph B, the Grantors . . . shall neither perform nor permit others to perform any of the following activities on said land:

> "1.) Construction or placing of any buildings . . . or other structures on or above the ground;

> . . .

> "5.) Use of said land except for agricultural, farming, or outdoor recreational purpose or purposes permitting said land to remain predominately in its natural condition;

---

[1] Now the Secretary of Environmental Affairs.

"B. The Grantors expressly reserve for themselves . . . the right to conduct or permit others . . . to conduct the following activities on said land:

"1.) . . . pruning, clearing and burning necessary for the proper raising of livestock and conduct of other agricultural activities; grazing of livestock; and construction and maintenance of fences necessary in conjunction therewith."

The stated purpose of the restriction is "to insure the preservation of [the property] in its present, predominantly natural and undeveloped condition."

Fishman was aware that the restriction applied to her property when she acquired it in 1993, and the deed to her from the seller made specific reference to that restriction. Fishman subsequently conveyed the property to herself, Irving Fishman, and Irma M. Fishman by deed dated August 15, 1996. Six years later, in March, 2002, Irving and Irma Fishman transferred their interest in the property, by deed, back to Fishman. Both deeds included a reference to the restriction.

Between 1996 and 2002, Fishman engaged a surveyor, Everett M. Brooks Company (Brooks) to prepare plans for certain improvements on the property. Brooks prepared three plans. The first, dated June 6, 1996, depicted a proposed new dwelling within the unrestricted area of the property. Fishman applied for and received a building permit and constructed a new house in accordance with this plan. The second, dated March 1, 1999, depicted the new dwelling and a proposed barn also to be constructed within the unrestricted area. Each of these plans contained a boundary line between the restricted and the unrestricted areas of the property. The third and final plan, dated June 4, 2002 (2002 plan), placed a barn in the restricted part of the property and omitted the boundary line separating the restricted area from the unrestricted area that was present on the prior two plans. Fishman applied for and received a building permit, and in July, 2002, she began construction of the barn as shown on the 2002 plan. The barn was to be used for agricultural purposes, including the breeding, raising, and training of horses.

During construction, Weston's conservation commission

(commission) conducted a survey of the property line separating Fishman's property from adjacent town-owned land. George Bates, the chairman of the commission and WFTA's treasurer, visited the property several times. His first visit occurred after Fishman had received a building permit and after construction of the barn had already begun. Bates never communicated with Fishman regarding the commission's work or the construction of the barn.

In August, 2003, after the barn was substantially completed, the WFTA notified Fishman that the new barn was in a restricted area and demanded that the barn be relocated. At that time, Fishman had invested more than $300,000 in construction costs.

2. *Discussion.* "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). See Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). Here, all evidentiary inferences must be resolved in favor of Fishman. See *Simplex Technologies, Inc.* v. *Liberty Mut. Ins. Co.*, 429 Mass. 196, 197 (1999).

Fishman does not dispute that the barn is located within the restricted area. She contends, however, that the judge erred in granting summary judgment because the doctrines of laches and estoppel preclude the WFTA's claim. She also argues that the restriction is ambiguous. There was no error. The judge correctly concluded that the doctrines of laches and estoppel do not apply and that the restriction is unambiguous.

a. *Laches.* Fishman argues that the doctrine of laches precludes the WFTA's claim because, due to Bates's failure to raise a timely objection to the location of the barn, the WFTA enforced the conservation restriction unduly and prejudicially late, causing her substantial economic harm. A finding of laches is possible if there is an "unjustified, unreasonable, and prejudicial delay in raising a claim." *Srebnick* v. *Lo-Law Transit Mgmt., Inc.*, 29 Mass. App. Ct. 45, 49 (1990). However, the doctrine of "[l]aches does not run against public rights." *Carnegie Inst. of Med. Lab. Technique, Inc.* v. *Approving Authy. for Schs. for Training Med. Lab. Technologists*, 350 Mass. 26, 30

(1965) (*Carnegie*). See *Board of Health of Holbrook* v. *Nelson*, 351 Mass. 17, 18 (1965) (doctrine of laches inapplicable to board of health, a public agency, which brought suit to enforce laws of the Commonwealth). See also *Stadium Manor, Inc.* v. *Division of Administrative Law Appeals*, 23 Mass. App. Ct. 958, 962 & n.9 (1987) (laches claim against Rate Setting Commission fails because of public interest in assuring that rates paid to nursing homes for care of patients eligible for public assistance are reasonable). Here as well, the Land Court judge concluded that the doctrine of laches does not run against the WFTA because enforcement of a conservation restriction "serves a public benefit." See *Bennett* v. *Commissioner of Food & Agric.*, 411 Mass. 1, 6 (1991) (enforcing agricultural preservation restriction against landowner because restriction reinforced legislatively stated public purpose of the conservation statute, G. L. c. 184, § 31). See also *Ingalls* v. *Board of Registration in Med.*, 445 Mass. 291, 296 (2005) (laches not applicable against medical board's action to revoke physician's license due to physician's sexual misconduct with patients because action enforces a public right).

Fishman contends that the Land Court judge erred because the WFTA is a private entity, and because the WFTA did not seek to enforce "public rights." *Carnegie*, 350 Mass. at 30. These arguments are unpersuasive.

As a threshold matter, the public or private nature of an entity is not dispositive of whether that entity is enforcing "public rights." See *Sears* v. *Treasurer & Receiver Gen.*, 327 Mass. 310, 326 (1951); *Carnegie*, 350 Mass. at 30 (nonprofit entity enforcing public rights). See also *Lake Michigan Fedn.* v. *United States Army Corps. of Engrs.*, 742 F. Supp. 441, 446-447, 447-448, 450 (N.D. Ill. 1990) (not applying laches against private entity seeking injunction to protect lakebed property). In passing the Conservation Restriction Act, G. L. c. 184, §§ 31-33, the Legislature recognized, and sought to protect, the public benefits of conserving land and water in their "natural, scenic or open condition" by government bodies and qualified charitable corporations or trusts. G. L. c. 184, § 31, inserted by St. 1969, c. 666, § 5.

Fishman's attempt to distinguish "public rights" from "public

interest" is similarly unavailing. In the context of this case, there is no significant difference between enforcement of a "public right" and protection of a "public interest." Fishman has failed to bring any Massachusetts authority supporting her argument to our attention, nor have we found any. Other jurisdictions make no distinction between public rights and matters affecting the public interest, and we see no such distinction. See *Gropp* v. *District of Columbia Bd. of Dentistry*, 606 A.2d 1010, 1016 (D.C. Cir. 1992) (refusing to apply laches against government agency acting to protect a public interest); *State ex rel. Stovell* v. *Heneley*, 271 Kan. 355, 389 (2001) (refusing to apply laches when cause of action was brought to "protect the public"); *In re LaPine*, 18 A.D. 3d 552, 554 (N.Y. 2005) (refusing to apply laches against State Attorney General's lawsuit seeking reimbursement of hospitalization costs because laches does not apply when "enforc[ing] a public right or protect[ing] a public interest"). See also *O'Reilly* v. *Glocester*, 621 A.2d 697, 703-704 (R.I. 1993) (using terms "rights" and "interests" interchangeably). Thus, we conclude that a nonprofit entity like the WFTA, created for the purpose of protecting and conserving land and water, should be immune from a laches defense where, as here, it seeks to ensure that a landowner acts in accordance with the public interest.

b. *Estoppel.* Also based on Bates's failure to contest the construction of the barn, Fishman contends that the doctrine of estoppel precludes the WFTA's claim because the WFTA's inaction induced her into believing that construction of the barn was permitted. "The essential factors giving rise to an estoppel are . . . (1.) A representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made. (2.) An act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made. (3.) Detriment to such person as a consequence of the act or omission." *Turnpike Motors, Inc.* v. *Newbury Group, Inc.*, 413 Mass. 119, 123 (1992), quoting from *Cleaveland* v. *Malden Sav. Bank*, 291 Mass. 295, 297-298 (1935). Further, the detrimental reliance by the party claiming estoppel must be reasonable. *Yarde Metals, Inc.* v. *New England Patriots Ltd. Partnership*, 64 Mass. App. Ct. 656, 661-662 (2005).

Similar to the doctrine of laches, "[e]stoppel is not applied to government acts where to do so would frustrate a policy intended to protect the public interest." *LaBarge* v. *Chief Administrative Justice of the Trial Ct.*, 402 Mass. 462, 468-469 (1988) (not applying estoppel against Chief Administrative Justice of the Trial Court where doing so would defeat public interest in maintaining impartiality and integrity of offices of trial court). See *Holahan* v. *Medford*, 394 Mass. 186, 191 (1985) (granting summary judgment for, and not applying estoppel against, assistant city solicitor where plaintiff was injured by printing press in public school and followed advice from assistant city solicitor instead of following statutory requirements for bringing a lawsuit); *Cellarmaster Wines of Mass., Inc.* v. *Alcoholic Bevs. Control Commn.*, 27 Mass. App. Ct. 25, 29 (1989) (not applying estoppel against Alcoholic Beverages Control Commission, which ordered plaintiff to stop advertising and conducting wine tasting sessions at locations off licensed premises, even if record supported plaintiff's position that plaintiff's marketing and licensing practices had been fully disclosed to the commission). As previously noted, although the WFTA is not a government entity, for purposes of enforcing a conservation restriction that is in the public interest, there is no difference between a governmental body and a private entity. Accordingly, estoppel does not apply in this case.

Moreover, even assuming that estoppel could be a defense against the WFTA, Fishman cannot prevail because, as the judge correctly found, Fishman's reliance on Bates's conduct was not reasonable. Notwithstanding Fishman's claim that she did not know that the 2002 plan placed the barn in the restricted area of the property, Fishman concedes, as she must, that she was fully aware of the restriction. As observed by the judge (and admitted to by Fishman), Fishman had two other plans (the 1996 and 1997 plans) that clearly depict the boundary between the restricted and unrestricted areas. Even though the boundary line depicted in the first two plans was not shown on the 2002 plan, a reasonable person who knew her land was subject to a conservation restriction, and who had seen the prior two plans, would have clarified the situation before building. See, e.g., *O'Blenes* v. *Zoning Bd. of Appeals*, 397 Mass. 555, 558-559

(1986) (affirming summary judgment and refusing to apply estoppel where it was unreasonable for plaintiff's counsel to rely on the statement of a clerk of the zoning board of appeals regarding a procedural deadline for initiating an appeal; counsel had an obligation to determine deadline based on statutory requirements). In the circumstances here, as matter of law, Fishman's reliance on Bates's presence on the property, and his lack of objection to the location of the barn, as a statement that the barn was properly placed, was unreasonable.

c. *Ambiguity*. Fishman further contends that the terms of the conservation restriction are ambiguous and can be interpreted to permit construction of a barn anywhere on her property. "A restriction, like a deed, 'is to be construed so as to give effect to the intent of the parties as manifested by the words used, interpreted in the light of the material circumstances and pertinent facts known to them at the time it was executed.' *Walker* v. *Sanderson*, 348 Mass. 409, 412 (1965). In addition, 'the restriction "must be construed beneficially, according to the apparent purpose of protection or advantage . . . it was intended to secure or promote." ' " *Chatham Conservation Foundation, Inc.* v. *Farber*, 56 Mass. App. Ct. 584, 590 (2002), quoting from *Maddalena* v. *Brand*, 7 Mass. App. Ct. 466, 469 (1979). The stated purpose of the restriction was "to insure the preservation of [the property] in its present, predominantly natural and undeveloped condition." See G. L. c. 184, § 31, inserted by St. 1969, c. 666, § 5 ("conservation restriction means a right . . . appropriate to retaining land or water areas predominantly in their natural, scenic or open condition").

The judge correctly concluded that there was no ambiguity in the conservation restriction. The restriction explicitly bans construction or placing of any buildings or structures on or above the ground. The barn is unambiguously a building or structure. See *Goldmuntz* v. *Chilmark*, 38 Mass. App. Ct. 696, 698-699 (1995) (holding, at summary judgment, that conservation restriction unambiguously prohibited building of swimming pool where restriction banned construction of structures). Although the restriction permits Fishman to prune, clear, and burn as necessary for the proper raising of livestock and conduct of other agricultural activities, nothing permits the building of a

barn for raising livestock or conducting other agricultural activities.

d. *Costs.* The WFTA argues that it is entitled to reasonable attorney's fees and double costs because Fishman has pursued an insubstantial and frivolous appeal. See Mass.R.A.P. 25, as appearing in 376 Mass. 949 (1979); G. L. c. 211A, § 15; G. L. c. 231, § 6F. We disagree. "An appeal is frivolous '[w]hen the law is well settled, when there can be no reasonable expectation of a reversal.' " *Love* v. *Pratt*, 64 Mass. App. Ct. 454, 459 (2005) (*Love*), quoting from *Avery* v. *Steele*, 414 Mass. 450, 455 (1993) (*Avery*). Sanctions for frivolousness should never be lightly imposed and should be reserved only for egregious occasions. *Avery*, 414 Mass. at 456.

This case is unlike *Avery*, *supra*, which involved a brief containing clear misrepresentations of law and of the opponent's arguments. Here, there are no such misrepresentations, and although Fishman's arguments are not persuasive, based on our review, we cannot say that the applicable law was so well settled that Fishman's arguments are frivolous. In particular, Fishman's estoppel and laches claims are not frivolous because the case law does not clearly establish that a private entity such as the WFTA is immune from such claims. Additionally, Fishman's argument that she reasonably relied upon Bates's inaction is not frivolous, despite the fact that her behavior was unreasonable. Therefore, we deny the WFTA's request for an award of attorney's fees and costs. See *Building Inspector of Peabody* v. *Northeast Nursery, Inc.*, 418 Mass. 401, 406 (1994) (not awarding costs to appellee where appellant's arguments were unpersuasive and unsuccessful in arguing that their nursery business constituted agriculture or horticulture). Contrast *Allen* v. *Batchelder*, 17 Mass. App. Ct. 453, 457-458 (1984) (awarding costs where 150 years of case law established that long, exclusive, uninterrupted possession of land for thirty years constitutes ouster regardless of cotenant's lack of knowledge, yet appellant claimed that his lack of knowledge for ninety years would not constitute ouster); *Britt* v. *Rosenberg*, 40 Mass. App. Ct. 552, 553-554 (1996) (awarding fees and double costs where appellant committed numerous discovery violations and conspired to commit fraud on the court); *Love*, 64 Mass. App. Ct. at 457,

459-460 (awarding fees and double costs on court's own motion where appellant's retention of buyer's deposit "was unjustified on any reasonable view of the facts and law").

*Judgment affirmed.*