Brady, Patrick F., J.

INTRODUCTION

The plaintiff, Donald Kilgallon (Kilgallon), brings this six-count complaint against Clear Channel Communications, Inc., SFX Entertainment, Inc., DLC Corporation and Aegis Protection Group, Inc.[2] arising out of the defendants’ alleged unlawful refusal to allow Kilgallon to resell four tickets he purchased to an Eric Clapton concert at the Tweeter Center on July 3,2004. Kilgallon alleges a violation of the Massachusetts Civil Rights Act, violation of G.L.c. 93A, false arrest, negligence only against DLC Corporation, negligent infliction of emotional distress, and breach of contract.[3] The defendants argue that Kilgallon’s tickets were nothing more than revocable licenses, which explicitly prohibited resale. The parties are now before this Court on the defendants’ motion for summary judgment and Kilgallon’s cross motion for partial summary judgment.[4] For the reasons set forth below, Clear Channel Communications, Inc. and SFX Entertainment, Inc.’s motion is ALLOWED, DLC Corporation’s motion is DENIED, and Kilgallon’s motion is DENIED.

BACKGROUND

On or about April 24, 2004, Kilgallon purchased, through Ticketmaster, four tickets to the July 3, 2004 Eric Clapton concert at the Tweeter Center in Mansfield, MA. The face value of each ticket was $75 and Kilgallon was charged a $10.45 service fee for each ticket.
For whatever reason, Kilgallon decided not to attend the concert. Instead, he went to the Tweeter Center on the day of the event in an effort to resell the tickets. Kilgallon stood outside of the entrance area and attempted to sell his tickets for face value.[5] Unbeknownst to Kilgallon, an Aegis security guard approached Kilgallon and asked him what he wanted for his tickets. After Kilgallon responded with a price of $75 for each ticket, the security guard asked to see the tickets and Kilgallon handed them to him. The security guard then used a portable radio to call for more officers and moments later, two Mansfield police officers and two more Aegis security guards arrived.
The officers and guards surrounded Kilgallon, requested that he produce identification, and wrote down his name and address. Kilgallon was advised he could not resell tickets on the Tweeter Center property. The original Aegis security guard marked the tickets “void” and returned them to Kilgallon. One of the security guards then read Kilgallon a trespass notice, which advised him that he had fifteen minutes to leave the Tweeter Center property. Kilgallon claims to have fallen ill as a result of this encounter and he vomited in the parking lot before being able to drive away. A demand letter on behalf of Kilgallon was sent to the defendants pursuant to G.L.c. 93A, §9 on August 25, 2004 to which the defendants failed to respond.

DISCUSSION

As an initial matter, Clear Channel Communications, Inc. and SFX Entertainment, Inc.’s motion for summary judgment must be allowed. These defendants do not belong in this lawsuit simply because they are the parent corporations of DLC. “The mere fact that one corporation owns all of the capital stock of a subsidiary corporation, standing alone, is not enough to warrant the disregard of their separate legal entities or sufficient to establish the subsidiary as the agent of the parent corporation.” Commonwealth v. Benefit Fin. Co., 360 Mass. 188, 291 (1971), quoting United States v. Brown & Sharpe Mfg. Co., 141 F.Sup. 520, 526 (D.R.I. 1956); Berger v. H.P. Hood, Inc., 416 Mass. 652, 657 (1993) (corporate separateness maybe disregarded “only where the corporation is a sham, or is used to perpetrate deception to defeat a public policy”). Nonetheless, in rare cases to prevent gross inequity, it is permissible to disregard separate corporate entities and “pierce the corporate veil.” Evans v. Multicon Construction Corp., 30 Mass.App.Ct. 728, 732 (1991). No such claim is presented here.

*76
Count I - Massachusetts Civil Rights Act

Kilgallon asserts Count I against the defendants for violation of the Massachusetts Civil Rights Act, (“MCRA”), G.L.c. 12, §111. To establish a cognizable claim under the MCRA, Kilgallon must prove: (1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or the Commonwealth, (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by “threats, intimidation or coercion.” Haufler v. Zotos, 446 Mass. 489, 504 (2006), quoting Bally v. Northeastern University, 403 Mass. 713, 717 (1989).
The purchase of a ticket to a sports or entertainment event usually creates nothing more than a revocable license. See Yarde Metals, Inc. v. New England Patriots Limited Partnership, 64 Mass.App.Ct. 656, 658 (2005), quoting Opinion of the Justices, 247 Mass. 589, 596 (1924). The tickets at issue in this case, however, are not like the tickets in Yarde Metals, Inc. where the back of the ticket clearly stated, “(t]his ticket and all season tickets are revocable licenses. The Patriots reserve the right to revoke such licenses, in their sole discretion, at any time for any reason.” Id. at 659. Here, the print on the back of the ticket is too small and therefore Kilgallon cannot be bound by its terms. “When the parties undertake to put their agreement in writing and express its crucial terms by characters or symbols so illegible that the tribunal established to try the facts cannot determine the signification of that which is on the paper, then no contract in writing has been made.” Aradalou v. New York, N.H. & H.P. Co., 225 Mass. 235, 240 (1916); see also Capital Automatic Music Co. v. Jones, 114 N.Y.S.2d 185 (1952) (emphasis in original) (defendant not bound by terms on back of paper that looked like a receipt where “the back thereof contained terms of a contract in such small print as to be unreadable to the average person without the use of a magnifying glass or microscope”). Therefore DLC’s motion as to count I is denied because Kilgallon had a right to sell his tickets, especially in light of the fact that the Massachusetts anti-scalping statute[6] did not prohibit Kilgallon’s actions. See Lainer v. City of Boston, 95 F.Sup.2d 17 (D.Mass. 2000) (Massachusetts anti-scalping law precludes a person’s resale of tickets only when done in the course of business and without a license). However, because there is a dispute as to whether DLC’s interference was done by way of threats, intimidation, or coercion, Kilgallon’s cross motion is also denied.

Count II - Chapter 93A

General Laws c. 93A, §2(a) makes unlawful any “unfair... acts or practices in the conduct of any trade or commerce." It is well established that conduct is unfair under c. 93A if the act lies “within ‘at least the penumbra of some common law, statutory or other established concept of unfairness . . . [or] is immoral, unethical, oppressive or unscrupulous.’ ” Massachusetts Farm Bureau Federation, Inc. v. Blue Cross of Massachusetts, Inc., 403 Mass. 722, 729 (1989).
Here, DLC maintains that the sole basis for Kilgallon’s 93A claim is the failure of DLC to respond to a demand letter sent on behalf of Kilgallon, which does not give rise to an actionable claim. However, Kilgallon’s 93A claim is premised upon the totality of the circumstances, namely seizure of Kilgallon’s tickets without compensation, the language on the back of the ticket being too small, no signs on the property prohibiting the resale of tickets, the fact that security guards and armed police officers surrounded him for fifteen minutes, and the arbitrary enforcement of a “policy” barring the sale of tickets at the venue. The 93A claim shall be left to the fact finder to resolve. Because Kilgallon bears the burden of proving the defendants’ actions were unfair and deceptive, Kilgallon’s cross motion with respect to the 93A claim is denied.

Count III - False Arrest/False Imprisonment

“ ‘If a man is restrained of his personal liberty by fear of a personal difficulty, that amounts to a false imprisonment’ within the legal meaning of such term.” Coblyn v. Kennedy’s, Inc., 359 Mass. 319, 321, (1971), quoting Jacques v. Childs Dining Hall Co., 244 Mass. 438, 438-39, (1923). False imprisonment requires unlawful confinement by force or threat. Ortiz v. County of Hampden, 16 Mass.App.Ct. 138, 140(1983). In Massachusetts, “any genuine restraint is sufficient to constitute an imprisonment, and though this be effected without actual contact with the person it will be presumptively actionable, and any demonstration of physical power which to all appearances can be avoided only by submission operates as effectually to constitute an imprisonment if submitted to as if any amount of force had been exercised.” Jacques v. Childs Dining Hall Co., 244 Mass. 438 (1923). Whether Kilgallon was restrained is a factual question for the jury and the cross motions are denied with respect to Count III.

Count IV & V - Negligence and Negligent Infliction of Emotional Distress

As owner of the Tweeter Center, DLC owed Kilgallon a duty of reasonable care. Hopkins v. F.W Woolworth Co., 11 Mass.App.Ct. 703, 704 (1981). Kilgallon must prove that DLC breached this duty, proximately causing injury to him. Davis v. Westwood Group, 420 Mass. 739, 742-43 (1995). Given the evidence presented by Kilgallon regarding how he was approached by five police officers and security guards, how he was not compensated for his tickets that were taken from him, and how he vomited immediately after this encounter, this case does not fall into that category of negligence cases where summary judgment may be granted because “the undisputed facts show that, as matter of law, there is no evidentiary support for a finding by reasonable people that defendant was negligent.” *77 Baptiste v. Sheriff of Bristol County, 35 Mass.App.Ct. 119, 125-26 (1993). Therefore, summary judgment is not appropriate on Kilgallon’s negligence claim and it will be left to the jury to determine whether DLC exercised reasonable care in confiscating Kilgallon’s tickets.
The elements of negligent infliction of mental anguish or emotional distress are: 1) negligence; 2) emotional distress; 3) causation; 4) physical harm manifested by objective symptomatology; and 5) that a reasonable person would have suffered emotional distress under the circumstances of the case. Rodriguez v. Cambridge Housing Authority, 443 Mass. 697, 701 (2005).
On a claim for negligent infliction of emotional distress, the evidence of physical harm required to withstand a defendant’s motion for summary judgment is objective evidence of harm corroborating the emotional distress alleged, sufficient to allow a jury to determine the validity of the claim. Sullivan v. Boston Gas Company, 414 Mass. 129, 137-38 (1993). The physical symptoms required to survive a motion for summary judgment need not be severe. In Sullivan, the court held the plaintiffs’ physical symptoms, which consisted of headaches,, sleeplessness, diarrhea, and “an overall ‘lousy’ feeling” satisfied the physical symptom standard, id. at 131.
With respect to the case at bar, Kilgallon has produced sufficient objective evidence of physical manifestation of mental distress to survive a summary judgment motion. Kilgallon vomited immediately after the encounter, he saw a doctor the week of the incident for fatigue, exhaustion, loose bowl movements, and nausea, symptoms very similar to those in Sullivan. Because the defendants dispute that the incident caused these physical symptoms as opposed to his preexisting health conditions, summary judgment as to this count is denied.

Count VI - Breach of Contract

The revocation of a license may constitute a breach of contract and give rise to an action for damages. Yarde Metals, Inc. v. New England Patriots Limited Partnership, 64 Mass.App.Ct. 656, 658 (2005). To establish a prima facie case of breach of contract, Kilgallon must show that he suffered damages as a result of the defendants’ breach. Restatement (Second) of Contracts, §1 (1979); see also Spring v. Geriatric Authority of Holyoke, 394 Mass. 274, 290 (1985) (the Court upheld a decision to reduce a jury award to nominal damages for breach of contract, without evidence of damages). Although this Court has determined that Kilgallon had a right to sell his tickets, there is a factual dispute as to whether Kilgallon suffered damages in light of the defendants’ alleged offer to compensate Kilgallon for the tickets. Accordingly, it is for the fact finder to determine whether there was a breach of contract and the cross motions for summary judgment with respect to the Count VI are denied.

ORDER

For the foregoing reasons, it is ORDERED that Clear Channel Communications, Inc. and SFX Entertainment, Inc.’s motion for summary judgment is ALLOWED, DLC Corporation’s motion for summary judgment is DENIED, and Kilgallon’s motion for summary judgment is DENIED.

Aegis is not before the Court on this motion.

KUgallon has withdrawn his claim to pursue this case as a class action and his request for preliminary injunctive relief.

Kilgallon has not moved for summary judgment as to Count V (negligent infliction of emotional distress).

Kilgallon was willing to forego the $10.45 service charge he paid for each ticket.

G.L.c. 140, §185A.