These cases concern disputes about repairs made to the Museum Square Parking Garage in Lawrence, Massachusetts. The City of Lawrence hired Vanguard Construction Company to be the general contractor with overall responsibility for the work, and retained Commercial Masonry Corporation to be the subcontractor responsible for certain masonry, waterproofing, and concrete work on the Project.
The contract set a deadline for Vanguard to “substantially complete” all work on the Project. The contract defines “substantial completion” as occurring when the City was able to “occupy or utilize” the Garage “for its intended use.” It also provides that “all specified times or periods of performance are of the essence of this Contract.”
The original contract provided that the “substantial completion date” was 304 calendar days after Vanguard was given notice to proceed with the work. It is undisputed that the contract was amended to extend this “substantial completion” deadline to December 20, 2021.
Vanguard and Commercial contend that the City further extended the substantial completion date in Change Orders #3 and #7. The Court is not persuaded. It concludes that, when read together and in the context of the contract as a whole, the change orders are unambiguous and did not extend the deadline for substantial completion.
 
                                                            -1-
 
1. Legal Background. The following well-established principles of contract interpretation inform the Court’s reading of these change orders.
Where written contracts are unambiguous when considered as a whole, as in this case, their meaning is a question of law for the Court to decide in advance of trial, not a question of fact to be resolved at trial. See Seaco Ins. Co. v. Barbosa, 435 Mass. 772, 779 (2002). If a trial judge concludes that a contract is unambiguous, then “the judge interprets the contract and instructs the jury accordingly, leaving it to the latter to determine whether, and to what extent, there has been a breach of the contract as so construed.” Quinn v. Mar-Lees Seafood, LLC, 69 Mass. App. Ct. 688, 695 (2007).
“Whether a contract is ambiguous is also a question of law.” Eigerman v. Putnam Investments, Inc., 450 Mass. 281, 287 (2007). Even if contract language is hard to parse, that does not make it ambiguous. See Sullivan v. Southland Life Ins. Co., 67 Mass. App. Ct. 439, 443 (2006).
That the parties disagree about how to read these change orders does not make them ambiguous. “[A]mbiguity is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the other’s.” Indus Partners, LLC v. Intelligroup, Inc., 77 Mass. App. Ct. 793, 795 (2010), quoting Suffolk Constr. Co., Inc. v. Lanco Scaffolding Co., 47 Mass. App. Ct. 726, 729 (1999).
A contracting party’s subjective understanding of what they thought their agreement provided cannot trump the plain meaning of unambiguous written contract terms. See, e.g., Eigerman, 450 Mass. at 288 n.8 (parties’ alleged “practical understanding” of how their agreement should be implemented cannot trump unambiguous contract language); Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 147 n.9 (2007) (parties’ subjective understanding of contract terms cannot create ambiguity); Herson v. New Boston Garden Corp.,  40 Mass. App. Ct. 779, 791–792 (1996) (parties’ “personal understanding” of contract meaning “irrelevant” in deciding whether contract is ambiguous).
Judges may not read a contract provision in isolation, but instead must construe each part in the context of the parties’ entire contract, including later amendments. See, e.g., General Convention of the New Jerusalem in the United States of Am., Inc. v. MacKenzie, 449 Mass. 832, 835 (2007) (“The words of a contract must be considered in the context of the entire contract rather than in isolation.”); Kingstown Corp. v. Black Cat Cranberry Corp., 65 Mass. App. Ct. 154,
 
                                                            -2-
 
158 (2005) (“[T]he parties’ intent ‘must be gathered from a fair construction of the contract as a whole and not by special emphasis upon any one part.’ ”) (quoting Ucello v. Cosentino, 354 Mass. 48, 51 (1968), and Crimmins & Peirce Co. v. Kidder Peabody Acceptance Corp., 282 Mass. 367, 375 (1933)).
2. Change Order #3. Commercial Masonry filed a motion in limine contending that Change Order #3 had the effect of extending the substantial completion deadline to August 1, 2022, and that the City should be equitably estopped from making a contrary argument. These assertions are without merit.
Change Order #3 had an effective date of March 15, 2022. It states that it is an amendment to the City’s original contract with Vanguard. This change order provides that, “The expiration date on this contract shall be changed to August 01, 2022,” and that “[a]ll other terms and conditions” of the original contract “shall remain in full force and effect through August 01, 2022.” Significantly, this change order expressly clarifies that, “The current required dates of Substantial and Final Completion remain unchanged” (emphasis added).
Commercial insists that, by extending the contract’s “expiration date,” this contract amendment necessarily had the effect of also extending the date by which Vanguard was required to substantially complete all work on the Project.
Not so. This change order expressly states that the date of Substantial Completion was not being changed. If one were to accept Commercial’s reading of this change order, that would negate and make superfluous the express provision stating that the amendment did not change the substantial completion deadline. That is not an appropriate way to read an unambiguous business contract. See, e.g., Lieber v. President and Fellows of Harvard College, 488 Mass. 816, 823 n.15 (2022) (“every word and phrase” of contract should be “given meaning, and none is to be rejected as surplusage if any other course is rationally possible”) (quoting Tupper v. Hancock, 319 Mass. 105, 109 (1946)).
In other words, the plain language of Change Order #3 makes clear that the reference to the contract’s “expiration date” was not a reference to, and did not have the effect of altering, the Substantial Completion deadline established in the contract. That is also the evident and plain meaning of the further sentence stating that “all other terms and conditions” of the original contract—which include the deadline for achieving Substantial Completion—“shall remain in full force and effect” without any change.
 
                                                            -3-
 
Commercial’s argument that the City should be equitably estopped from denying that Change Order #3 extended the substantial completion date is also without merit. “[E]stoppel generally does not apply to governmental entities.” Hertz v. Sec'y of Exec. Off. of Energy & Envtl Affairs, 73 Mass. App. Ct. 770, 776 (2009). In any case, to prevail on its estoppel claim Commercial “must show, amongst other things, that its reliance on any alleged representation was reasonable.” Yarde Metals, Inc. v. New England Patriots Ltd. P'ship, 64 Mass. App. Ct. 656, 661 (2005). It would have been “unreasonable as a matter of law” for Commercial to construe Change Order #3 as extending the substantial completion date and then to rely upon that purported representation, because that understanding “conflicted with the qualifying language” in the written change order, as discussed above. Id., quoting Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 468 (2003).
3. Change Order #7. During yesterday’s final trial conference, Vanguard argued that Change Order #7 had the effect of extending the substantial completion deadline to October 31, 2022. This argument is also without merit.
Change Order #7 is very similar to the change order discussed above. This further change order had an effective date of August 2, 2022—one day after the new “expiration date” established by Change Order #3. This later change order also states that it is an amendment to the City’s original contract with Vanguard. Change Order #7 provides that, “The expiration date on this contract shall be changed to October 31, 2022,” and that “[a]ll other terms and conditions” of the original contract “shall remain in full force and effect through October 31, 2022.” This change order also notes that, “Contract time will be increased by 91 calendar day[s]” (cleaned up), because October 31 (the new “expiration date”) is 91 days after August 1 (the prior “expiration date”).
Since both change orders use the same language in stating that “[t]he expiration date of this contract shall be changed,” and nothing else in the contract documents as a whole or in the relevant business context suggests that the parties intended this provision to mean something different in Change Order #7 than in Change Order #3, both provisions mean the same thing as a matter of law. See Eastern Mass. Street Railway Co. v. Boston Elevated Railway Co., 310 Mass. 659, 664 (1942) (“in general, the same phrase used in different places in an instrument is to be given the same meaning, unless a different meaning is required by the context”); Clark v. State St. Trust Co., 270 Mass. 140, 151 (1930) (“in interpreting a will, contract or statute, words used in one undoubted sense
 
                                                            -4-
 
in one place may be presumed to be used in the same meaning in another place,” unless document “as a whole” requires different interpretation).
Thus, in the context of the contract as a whole, including the plain language of Change Order #3, the further extension of the contract’s “expiration date” or “contract time” in Change Order #7 unambiguously did not extend the substantial completion deadline—for all of the reasons discussed above.
ORDER
The motion by Commercial Masonry Corporation to preclude argument by the City of Lawrence that it did not extend the contract completion date is denied. The Court will instruct the jury that Change Orders #3 and #7 did not extend the contractual deadline for substantial completion of the Project.
/s/Kenneth W. Salinger Justice of the Superior Court
February 26, 2026